**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| **LOS ALAMOS NATIONAL BANK, N.A.** § § § | |
| **Plaintiff,** § § | |
| v. § § | Case No. _____ |
| **FIDELITY BANK,** § § § | |
| **Defendant.** § | |

## COMPLAINT

Los Alamos National Bank, N.A. ("Plaintiff" or "LANB") brings this action against Fidelity Bank ("Defendant" or "Fidelity") for declaratory relief and respectfully states as follows:

## PARTIES

1. LANB is a national banking association, with its location, as set forth in its Articles of Associations, at 1200 Trinity Drive, Los Alamos, New Mexico 87544.

2. Fidelity is a federally chartered savings bank, with its principal offices at 100 East English, Wichita, Kansas, 67202. Fidelity may be served by delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process at 100 East English, Wichita, Kansas, 67202.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332(a) because the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of attorneys' fees, interest and costs. By this action, LANB seeks a declaration relating to a Mortgage Loan Servicing Rights Purchase Agreement

1

pursuant to which LANB sold servicing rights to certain mortgage loans to Defendant. The amount in controversy exceeds $75,000 because Fidelity has demanded that LANB repurchase servicing rights for 240 mortgages, the value of which exceeds $1,000,000.00. Also, this Court has jurisdiction pursuant to 28 U.S.C. §2201.

4. This Court has personal jurisdiction over Fidelity because Fidelity transacted business in New Mexico by purchasing the servicing rights to mortgages involving residential real property located in New Mexico and this district. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district, and because all of the property that is the subject of the action, in particular, the properties which are the subject of the apparently 240 mortgage loans at issue, are located in this district, the claims allegedly being made by the Pueblos at issue are all located in New Mexico, and the Agreement and the related due diligence has been performed, at least in part, in this district.

**FACTS**

5. This lawsuit (the "Lawsuit") relates to Fidelity's purchase of the servicing rights to more than 1,000 mortgages previously originated by LANB and which secure property located in New Mexico. Specifically, in or about December 2017, Fidelity and LANB executed that certain Mortgage Loan Servicing Rights Purchase Agreement (the "Agreement") whereby Fidelity purchased the servicing rights to more than 1,000 mortgage loans held by LANB. The Agreement provided that Defendant would purchase, "together with all other right, title, and interest of [LANB, as seller]" the servicing rights to approximately 1,100 mortgage loans that were specifically identified in the Agreement. The servicing rights for the mortgages listed in the

Agreement pertained to properties exclusively located in New Mexico. In exchange for the servicing rights, Fidelity paid LANB in excess of $5,000,000.00.

6.    Before closing, the parties engaged in a due diligence period, whereby Fidelity requested from LANB in New Mexico, and LANB transmitted from its headquarters in New Mexico, the underlying documents and information pertaining to the mortgage loans. The Agreement closed and was funded on December 31, 2017.

7.    Thereafter, on or around April 11, 2018, Fidelity made demand (the "Demand") that LANB repurchase the rights to 240 of the mortgages (the "Disputed Mortgages"). Fidelity claims that the Disputed Mortgages are encumbered by claims being made by four pueblos (the "Pueblos") and the U.S. Department of the Interior. Fidelity asserts that the Pueblos claim the properties subject to the Disputed Mortgages, or the roads accessing the properties, illegally trespass on land owned or claimed by the Pueblos.

8.    Specifically, Defendant alleged in its Demand that LANB breached section 4.03.12 of the Representations and Warranties of Seller, which states:

> At the time the Mortgage Loan was originated, there did not exist any circumstances or conditions with respect to the Mortgage, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing that would cause Investors to regard the Mortgage Loan as subject to Sections 5.06 and 5.07 [pertaining to repurchase] hereof, cause the Mortgage Loan to become delinquent, adversely affect the value or marketability of the Mortgage Loan or otherwise cause the Mortgage Loan or Servicing Rights to be subject to repurchase as provided in this Agreement.

Fidelity further asserted that LANB breached its representations and warranties by failing to comply with certain Fannie Mae "Guidelines," as that term is defined in the Agreement, specifically, that the roads accessing the properties do not comply with "local standards" as a result of the Pueblos' claims.

9. Contrary to Fidelity's assertions, LANB has not breached any representation or warranty contained in the Agreement creating any "Defect" with respect to the Disputed Mortgages that would trigger a repurchase obligation under sections 5.06 or 5.07 of the Agreement. A "Defect" is defined as:

> a) any representation or warranty by Seller which is incorrect, misleading, untrue or otherwise constitutes a breach of Seller's obligations with respect to a Mortgage Loan or b) any failure by Seller to comply with any covenant, term or condition herein contained with respect to a Mortgage Loan.

10. LANB did not breach the representation under section 4.03.12 in that it is clearly qualified by the language "[a]t the time the Mortgage Loan was *originated* . . . ." (emphasis added). The alleged claims by the Pueblos did not exist at the time the Disputed Mortgages, or all of them, were *originated*, and the settlements involving the Pueblos pertaining to the claims did not occur until *after* the Agreement closed. As such, Fidelity's claim that Section 4.03.12 was breached and requires the repurchase of the Disputed Mortgages is flawed and meritless, not to mention that Fidelity has suffered no damages as a result of any alleged breach.

11. Fidelity's claim that the Disputed Mortgages did not comply with certain Fannie Mae "Guidelines" and are therefore defective and subject to repurchase is also flawed. LANB did not have a duty to disclose unknown or unknowable facts, including, but not limited to, claims that may exist in the future, relating to accessibility to the properties underlying the Disputed Mortgages. And the phrase "local standards" cannot reasonably be interpreted to refer to speculative and/or unsubstantiated trespass claims by certain pueblos.

12. Fidelity's continued insistence that LANB repurchase all 240 Disputed Mortgages while relying on a deeply flawed and facially incorrect reading of the Agreement, led to the filing of this Lawsuit.

## COUNT 1 – DECLARATORY JUDGMENT

13. There is a current, ongoing dispute between LANB and Fidelity over whether LANB must repurchase the servicing rights to 240 mortgages that were transferred to Fidelity pursuant to the Agreement. LANB seek a judgment pursuant to 28 U.S.C. §2201, declaring that:

   a. LANB has not caused a "Defect" with respect to the Disputed Mortgages;

   b. LANB does not have an obligation pursuant to sections 5.06 and 5.07 of Agreement to repurchase the Disputed Mortgages; and

   c. LANB has not breached its representations and warranties made in the Agreement.

## COUNT II – ATTORNEYS' FEES

14. The Agreement further provides that:

   If any action at law or in equity, including an action for declaratory relief, is brought to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees from the other party. Such fees may be set by the court in the trial of such action or may be enforced in a separate action brought for that purpose. Such fees shall be in addition to any other relief that may be awarded.

15. LANB has retained the undersigned counsel to represent it in this Lawsuit, and has agreed to pay its attorneys reasonable fees and expenses for their services.

16. In addition to declaratory relief, LANB seeks judgment against Fidelity for fees and expenses incurred in this action.

## PRAYER

Plaintiff Los Alamos National Bank respectfully request that Defendant Fidelity Bank be cited to appear and answer and that, on final trial, the Court enter a declaratory judgment that Los Alamos has not caused a "Defect" with respect to the Disputed Mortgages, is not obligated

to repurchase the Disputed Mortgages, and is not in breach of any of the representations and warranties it made in connection with the Agreement. Plaintiff also respectfully requests that the Court award Plaintiff its costs, including attorneys' fees and expenses, and such other and further relief to which it may be justly entitled.

Dated: June 28, 2018    Respectfully submitted,

By: */s/ Robert P. Warburton*
Robert P. Warburton
New Mexico Bar No. 6326
RPW@stelznerlaw.com
**STELZNER, WINTER, WARBURTON, FLORES, SANCHEZ & DAWES P.A.**
302 8th St. NW, Suite 200
P.O. Box 528
Albuquerque, New Mexico 87103-0528
(505) 938-7770
(505) 938-7781 (Fax)

-and-

Eric R. Hail
Texas Bar No. 24047579
ehail@huntonAK.com
Katherine Beran
Texas Bar No. 24097295
kberan@huntonAK.com
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
(214) 468-3309
(214) 740-7110 (Fax)

**ATTORNEYS FOR PLAINTIFF LOS ALAMOS NATIONAL BANK, N.A.**