IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LOS ALAMOS NATIONAL BANK, N.A.,

    Plaintiff,

vs.                                                        18cv613 KG/JHR

FIDELITY BANK,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff/Counter-Defendant Los Alamos National Bank, N.A.'s (LANB) Motion to Dismiss Amended Counterclaim (Motion), filed October 18, 2018. (Doc. 30). Defendant/Counter-Plaintiff Fidelity Bank (Fidelity), filed its Response on November 8, 2018, opposing the Motion. (Doc. 34). LANB filed its Reply on November 21, 2018. (Doc. 35). Having considered the briefing, the record, and the applicable law, the Court grants-in-part LANB's Motion to Dismiss Amended Counterclaim (Doc. 30) and dismisses Count II of the Amended Counterclaim, Breach of Implied Covenant.[1] The Court otherwise denies the Motion.

I.     Background and Procedural History[2]

This case arises out of alleged breaches of a Mortgage Loan Servicing Rights Purchase Agreement (Agreement) by which LANB sold Fidelity the servicing rights to approximately

---

[1] The Court previously set a hearing on this matter. (Doc. 44). However, based on its review of the briefing and applicable law, a hearing would not materially aid the Court in its ruling. Therefore, the Court vacates the hearing previously set on this matter.

[2] Unless otherwise noted, all facts contained in this section are undisputed and come from the Complaint and Amended Counterclaim.

4,500 mortgage loans on real property in northern New Mexico.

A. The Agreement[3]

The Agreement contains myriad warranties and representations from LANB, including that, as of the transfer of the servicing rights on January 1, 2018:

- "[a]ll data furnished to [Fidelity] in connection with the Servicing Rights is true and accurate" (Agreement at 4.02.01)

- "[LANB] has good and marketable title to and is the sole owner of the Servicing Rights . . . and is aware of no adverse claims to or encumbrances on such rights" (Agreement at 4.02.03)

- "[t]here are no actions, claims, litigation, lawsuits, or governmental investigations pending or, to the [actual or constructive knowledge of LANB, or based on information contained in its files], threatened and not disclosed to [Fidelity], nor are there Settlement Agreements or investor indemnification agreements entered into . . . that would be binding on [Fidelity], that relate to the Servicing Rights or the Mortgage Loans, other than usual and customary actions such as foreclosure of bankruptcy proceedings (the matter to be disclosed include, but are not limited to, any claims or rights allegedly restricting [Fidelity's] ability to convey or **affecting the value of the Servicing Rights**)"   (Agreement at 4.02.04 (emphasis added))

- "the Mortgaged Property is free and clear of all encumbrances and liens, except for encumbrances permitted under the [Fannie Mae] Guidelines . . ." (Agreement at 4.03.02)

- "[a]ll origination and servicing requirements, obligations and duties of [LANB] as set forth in the [Fannie Mae] Guidelines have been met in all respects" (Agreement at 4.03.05)

- "[a]t the time the Mortgage Loan was originated, there did not exist any circumstances or conditions with respect to the Mortgage, the Mortgaged Property, [or] the Mortgagor . . . that would cause Investors to regard the

---

[3] The Court may consider "(1) references [to documents] in the complaint that are (2) central to a plaintiff's claims, and (3) indisputably authentic when resolving a motion to dismiss without converting the motion to one for summary judgment."  *Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir. 2014).

2

> Mortgage Loan as subject to Sections 5.06 and 5.07 hereof, cause the Mortgage Loan to become delinquent, adversely affect the value or marketability of the Mortgage Loan or otherwise cause the Mortgage Loan or Servicing Rights to be subject to repurchase as provided in this Agreement"[4] (Agreement at 4.03.12)
>
> - "[LANB] has complied in all respects with all [Fannie Mae or other applicable Guidelines] or, prior to [January 1, 2018], will have cured any such non-compliance to bring it into compliance with [the applicable Guidelines] in all respects . . . [and LANB] has not received any notice of alleged violations of the [applicable Guidelines]" (Agreement at 4.03.30)

(Doc. 30-1).

The Agreement provides Fidelity several options in the event of a "defect" with any of the mortgages whose servicing rights Fidelity purchased. A defect means "a) any representation or warranty by [LANB] which is incorrect, misleading, untrue or otherwise constitutes a breach of [LANB's] obligations with respect to a Mortgage Loan or b) any failure by [LANB] to comply with any covenant, term or condition herein contained with respect to a Mortgage Loan." (Doc. 30-1) at 6. First, LANB "shall cure such [d]efect" within thirty days. (Agreement at 5.06). In the event the defect cannot be or is not cured, LANB "will repurchase the Servicing Rights to such defective Mortgage Loan not later than the expiration of the thirty (30) day period at the applicable Repurchase Price." (*Id.*) "If [LANB] fails to repurchase the Servicing Rights to such defective Mortgage Loan at the time and in the manner provided . . . , [Fidelity] shall have all other rights and remedies provided in this Agreement or by law." (*Id.*)

Fidelity retained additional rights and options if "any [d]efect or other issue that arises out of or results from the origination, delivery or servicing of the Mortgage Loan prior to

---

[4] Sections 5.06 (Repurchase of Mortgage Servicing Rights) and 5.07 (Repurchase Requirements for Defects in Mortgage Loans) are addressed *infra*.

[January 1, 2018] . . . which, in the reasonable discretion of [Fidelity], adversely affects the value or marketability of the related Mortgage Loan or Servicing Rights. (*Id.*) If LANB could not or did not cure any of these conditions after the applicable cure period, then LANB "shall, at [Fidelity's] option, (x) repurchase the related Mortgage Loan . . . [or] (y) . . . repurchase the Servicing Rights pertaining to the related Mortgage Loan . . . ." (Agreement at 5.07(c)).

Finally, Fidelity and LANB "agree that this Agreement shall be construed in accordance with and governed by the laws of the State of Kansas, including its conflict of laws rules." (Agreement at 6.05).

B. Access Claims

The Pueblos of Nambe, Pojoaque, San Ildefonso, and Tesuque (collectively, "the Pueblos") assert that certain county roads built by the County of Santa Fe trespass on tribal land (Access Claims). According to Fidelity, these Access Claims impact the access roads to approximately 240 real properties subject to mortgages now serviced by Fidelity. Furthermore, disputed access roads cloud title to the mortgaged properties. The Pueblos and the County of Santa Fe have known about and worked on these issues since at least 2012. These Access Claims became the subject of a federal lawsuit in this District in 2015, *Northern New Mexicans Protecting Land Water and Rights v. United States of America, et al.*, 15-CV-559 JB/LF. In addition to the federal lawsuit, newspapers in the Los Alamos area began reporting on these issues as early as July 1, 2015, and continuing into January 2018.

C. This Lawsuit

On April 11, 2018, Fidelity wrote to LANB asserting that the Pueblos' Access Claims clouded title to approximately 240 mortgaged properties, rendering those mortgage loans

4

"defective" within the meaning of the Agreement. (Doc. 30-2). Fidelity demanded that LANB repurchase the defective loans.

LANB refused and filed this declaratory judgment action, seeking a declaration that LANB did not cause a defect in the mortgage loans or servicing rights, has no obligation to repurchase the mortgage loans or servicing rights, and did not breach the Agreement. LANB also seeks attorney's fees, pursuant to the Agreement.

Fidelity brought contractual and tort counterclaims against LANB, specifically, breach of contract, breach of the implied covenant of good faith and fair dealing, intentional misrepresentation, fraud by silence, and negligent misrepresentation. Fidelity, too, seeks its attorney's fees.

LANB now moves to dismiss Fidelity's Amended Counterclaim (Doc. 26) for failure to plead the fraud claims with sufficient particularity, as required by Federal Rule of Civil Procedure 9(b), and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).[5] (Doc. 30). In the alternative, LANB seeks a more definite statement pursuant to Rule 12(e).

---

[5] LANB cites Rule 8 in its Motion but does not otherwise argue or address Rule 8. Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To meet this notice requirement, a complaint must "list or clearly articulate any causes of action." *Polovino v. Int'l Bhd. of Elect. Workers, AFL-CIO*, 2015 WL 4716543, at *4 (N.D. Okla.), *appeal dismissed* (Dec. 23, 2015) (citing *Mann v. Boatright*, 477 F.3d 1140, 1147-48 (10th Cir. 2007)). LANB does not argue that Fidelity's claims are not properly presented or do not provide fair notice. Therefore, the Court rejects LANB's implicit Rule 8 argument.

Because LANB and Fidelity are citizens of different states and the amount in controversy exceeds $75,000, the Court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332.

II.     Discussion[6]

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff.  *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).  Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions, and a formulaic recitation of the elements of a cause of action.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief.  *Id.* at 570.  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading," the responding party may move for a more definite statement under Rule 12(e).  *Moya v. Schollenbarger*, 465 F.3d 444, 446 n.2 (10th Cir. 2006).  A motion for a more definite statement is used to provide a remedy

---

[6] The Court will discuss the Counts in the order in which LANB addressed them in its Motion.

only for an unintelligible pleading, rather than to correct inaccurate assertions, add precision, or flesh out a lack of detail. *See, e.g.*, *Frazier v. Se. Penn. Transp. Auth.*, 868 F. Supp. 757, 763 (E.D. Pa. 1994) (denying motion for more definite statement where complaint "affords [respondent] with notice as to the nature and basis of [the] claims).

1. *Governing Law*

As an initial matter, the parties obliquely reference disagreement as to which substantive law applies to this case. The parties did not brief the choice of law issue, nor squarely present the issue to the Court. Nonetheless, when sitting in diversity, federal courts apply the choice of law rules of the forum state, in this case, New Mexico. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The first step in a New Mexico choice of law analysis is to characterize the claim by "area of substantive law—e.g., torts, contracts, domestic relations—to which the law of the forum assigns a particular claim or issue." *Terrazas v. Garland & Loman, Inc.*, 2006-NMCA-111, ¶ 11, 142 P.3d 374.

When a claim sounds in contract, New Mexico generally applies the law of the place of contracting, but "respects party autonomy; [therefore] the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision." *Fiser v. Dell Computer Corp.*, 2008-NMSC-046, ¶ 7, 188 P.3d 1215. When a plaintiff invokes federal diversity jurisdiction, the district court must accept New Mexico's law regarding whether to honor a contractual choice of law provision. *MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1260 (10th Cir. 2006) ("In cases like this one, where subject matter jurisdiction is based on diversity of citizenship, federal courts must look to the forum state's choice-of-law rules to determine the effect of a contractual choice-of-law clause.").

7

When a claim sounds in tort, however, "New Mexico courts follow the doctrine of *lex loci delicti commissi*—that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred." *Terrazas*, 2006-NMCA-111, ¶ 12.

2. *Breach of Contract Claim (Count 1)*

LANB contends that, even if the Court assumes the Amended Counterclaim's allegations to be true, Fidelity's Amended Counterclaim does not state a claim for a breach of contract because the Amended Counterclaim does not provide sufficient factual allegations of LANB's breach of the Agreement or how that breach damaged Fidelity.

The Agreement expressly states that it "shall be construed in accordance with and governed by" Kansas law. (Agreement at 6.05). Under New Mexico's choice of law rules, the Court, therefore, applies the substantive law of Kansas to analyze this claim.

Under Kansas law, a breach of contract claim requires "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach." *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013).

LANB tacitly admits that Fidelity alleged facts sufficient to support elements 1, 2, and 3, but contends that the Amended Counterclaim fails to allege facts sufficient to plausibly sustain elements 4 and 5. In support of its argument, LANB claims Fidelity failed to plead facts sufficient to support that a "defect" occurred under the Agreement, and further failed to plead facts plausibly alleging that Fidelity suffered damage because of any breach.

LANB warranted that "the Mortgaged Property is free and clear of all encumbrances and

liens, except for encumbrances permitted under the [Fannie Mae] Guidelines . . ." (Agreement at 4.03.02). The Agreement clearly defines a "Defect" to include any "incorrect, misleading, [or] untrue" representation or warranty made by LANB to Fidelity. (Doc. 26) at ¶ 14; (Doc. 30-1) at 6. The Amended Counterclaim adequately alleges that the Access Claims constitute an encumbrance on the affected mortgaged properties, resulting in clouded title on those properties. (Doc. 26) at ¶ 37. Fidelity's factual assertions on this point satisfactorily allege the fourth element, that LANB breached the Agreement.

As to damages, Fidelity alleges in its Amended Counterclaim that servicing rights on mortgage loans secured by property with clouded title are less valuable than those rights on mortgage loans secured by property with clean title. (Doc. 26) at ¶ 45; *see also* (Agreement at 5.07(a) (Fidelity has right to demand LANB repurchase servicing rights if "any [d]efect or other issue that arises out of or results from the origination, delivery or servicing of the Mortgage Loan prior to [January 1, 2018] . . . which, in the reasonable discretion of [Fidelity], adversely affects the value or marketability of the related Mortgage Loan or Servicing Rights")). Thus, Fidelity plausibly alleges damages stemming from LANB's alleged breach.

Therefore, Fidelity adequately pled facts sufficient to state a plausible breach of contract claim under Kansas law and Count I provides adequate notice of the claim. The Court denies LANB's Motion to Dismiss or for a more definite statement as to Count I.

3. *Breach of Implied Covenant Claim (Count II)*

New Mexico recognizes that a claim for breach of the implied covenant of good faith and fair dealing sounds in contract rather than in tort. *See Bourgeous v. Horizon Healthcare Corp.*, 1994-NMSC-038, ¶¶ 15-17, 872 P.2d 852 (analyzing breach of implied covenant as contract

9

claim absent "special relationship").  Fidelity does not assert that a "special relationship" exists in this case.  As such, Fidelity's Breach of Implied Covenant claim, Count II, sounds in contract.  Under the choice of law principles discussed above, contract claims fall within the ambit of the Agreement's choice of law provision.  Therefore, Kansas law applies.

Fidelity acknowledges that Kansas does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing.  (Doc. 34) at 9; *see Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1359 (D. Kan. 1996) (holding no separate cause of action for implied covenant of good faith and fair dealing under Kansas law); *Bonanza, Inc. v. McLean*, 747 P.2d 792, 801 (Kan. 1987) (analyzing breach of implied covenant as breach of contractual obligation).  Because Kansas law applies and the parties stipulate that no separate cause of action exists for this claim, the Court grants LANB's Motion to Dismiss as to Count II, Breach of Implied Covenant.

    4.  *Fraud Claims*

LANB argues that Counts III and IV, Intentional Misrepresentation and Fraud by Silence, respectively, lack the factual specificity required by Rule 9(b).

Fraud claims necessitate a heightened pleading standard under Rule 9(b), which provides: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  The Tenth Circuit "requires a complaint alleging fraud to 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"  *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir.

1991)). While Rule 9(b) adds particularity requirements for allegations of fraud, it should not be read to defeat the general policy of simplicity and flexibility in pleadings contemplated by the Federal Rules of Civil Procedure. *See, e.g.*, *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 678 (6th Cir. 1988) (noting purpose of particularity requirement is to provide defendant fair notice of substance of claim).

a. *Intentional Misrepresentation Claim (Count III)*

As an initial matter, the intentional misrepresentation claim does not constitute a contract claim masquerading as a tort claim that should be analyzed under Kansas law. LANB does not argue otherwise. Therefore, the Court applies New Mexico law to Count III.

An intentional (or fraudulent) misrepresentation claim "requires that the injured party show that the other party (1) made a misrepresentation of fact intentionally or with reckless disregard for the truth, (2) with the intent to deceive and to induce the injured party to act upon it, (3) and upon which the injured party actually and detrimentally relies." *Saylor v. Valles*, 2003-NMCA-037, ¶ 21, 63 P.3d 1152 (citing NMRA 13-1633 (2002)).

The Amended Counterclaim alleges that LANB provided loan files to Fidelity during the due diligence phase of negotiations. Fidelity claims that individual mortgagees, including Gerald Seitz, reported the Access Claims to LANB in writing. (Doc. 26) at ¶ 65. According to Fidelity, LANB removed from the Seitz loan file any documentation regarding the Access Claims. (*Id.*) at ¶ 67. Thus, LANB allegedly represented that the mortgages were free from defect and the mortgaged property had clean title, when LANB in fact knew this to be false. Fidelity further contends that LANB represented, after closing the Agreement, that no loans were affected by claims, litigation, or investigation which might affect the value of the servicing

11

rights. (Doc. 26-11). LANB represented that there were none.

Additionally, Fidelity asserts that the Access Claims were widely reported in northern New Mexico, where LANB operates, prior to and during negotiations for the Agreement. (Doc. 26) at ¶ 34. The Access Claims even became the subject of a federal lawsuit filed in 2015. (*Id.*) at ¶ 33. Fidelity expressly alleges that LANB knew about or recklessly disregarded the Access Claims and their impact on the mortgaged property and servicing rights at issue. (*Id.*) at ¶ 64. The false representations at issue allegedly came from Tom Lilly, Chief Credit Officer at LANB, Ryan O'Connor, Vice President, and Cathy Shisler, loss mitigation supervisor. (*Id.*) at ¶ 72. Fidelity adequately alleges that LANB's made false representations.

Consequently, Fidelity asserts that it relied on LANB's false representations in entering into the Agreement and that as a result of the false misrepresentations it overpaid for the servicing rights.

Count III contains adequate particularity to put LANB on notice of the alleged fraud under Rule 9(b) and adequately pleads sufficient facts to plausibly state a claim for intentional misrepresentation.

      b. *Fraud by Silence Claim (Count IV)*

As an initial matter, the parties do not address choice of law issues with respect to the fraud by silence claim. Both parties cite to *Ensminger v. Terminix Int'l Co.* for the elements of a fraud-by-silence claim under Kansas law. 102 F.3d 1571, 1573-74 (10th Cir. 1996). Fraud by silence sounds in tort, as it goes beyond the mere failure to perform under the contract. However, New Mexico does not recognize a fraud-by-silence claim. Rather, this claim is subsumed by Counts III and V, intentional and negligent misrepresentation, respectively.

Because New Mexico does not recognize this claim, Count IV, Fraud by Silence, fails to state a cause of action under Rule 12(b)(6). The Court, therefore, dismisses Count IV without prejudice.

        c. *Economic Loss Doctrine*

Because the fraud claims survive Rules 9(b) and 12(b)(6), LANB argues that the economic loss doctrine bars Count III. The economic loss rule precludes recovery in tort for purely economic losses where the claims alleged are based on breach of an express or implied contractual duty. *See Utah Int'l Inc. v. Caterpillar Tractor Co.*, 1989-NMCA-010, ¶ 17, 775 P.2d 741 (adopting economic loss rule and holding "damages for . . . economic losses in commercial settings in New Mexico may only be recovered in contract actions"). The purpose of the rule is not to bar the recovery of economic loss damages; rather, the rule bars recovery of such damages under a tort cause of action. *In re Consolidated Vista Hills Retaining Wall Litigation*, 1995-NMSC-020, ¶ 13, 893 P.2d 438 ("parties should not be allowed to use tort law to alter or avoid the bargain struck in the contract"); *see Farmers Alliance Mut. Ins. Co. v. Naylor*, 480 F. Supp. 2d 1287, 1289 (D.N.M. 2007) ("The economic loss rule provides that a plaintiff may not recover in tort for losses that are purely economic, i.e., not involving personal injury or property damage."). New Mexico's economic loss rule serves "to allow commercial parties to freely contract and allocate the risk of defective products as they wish." *Utah Int'l*, 1989-NMCA-010, ¶ 17. Put another way, "[t]he purpose of the economic-loss rule . . . is to preserve the bedrock principle that contract damages be limited to those within the contemplation and control of the parties in framing their agreement." *Vista Hills*, 1995-NMSC-020, ¶ 28 (internal quotation and citation omitted).

The economic loss rule does not, however, bar a tort claim where an independent duty exists, "because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule." *Farmers Alliance Mut. Ins. Co. v. Naylor*, 452 F. Supp. 2d 1167, 1173 (D.N.M. 2006). When the alleged fraud goes beyond failure to perform under the contract, those claims may sound in tort. *Bhandari v. VHA Southwest Community Health Corp.*, 2011 WL 1336515, at *24 (D.N.M. 2011) (holding economic loss rule does not bar claims of fraud when allegations extend beyond assertion that party failed to perform under contract).

Notably, the economic loss rule originated in the context of products liability, though some courts have extended the rule to the service contract context. *Bhandari*, 2011 WL 1336515, at * 20; *see, e.g.*, *Rochester-Genesee Regional Trans. Auth. v. Cummins Inc.*, 2010 WL 2998768, at *10 (W.D.N.Y. 2010) ("Where the parties are under a contractual relationship, recovery of economic loss is not available regardless of whether the contract is for the provision of goods or of services."). However, the parties have not cited and the Court has not found any New Mexico court case addressing the applicability of the economic loss rule to a situation such as this, involving alleged fraud during negotiations. Thus, the Court, sitting in diversity, must consider how the Supreme Court of New Mexico would decide the issue. *Wade v. Emcasco Ins. Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007).

It is not at all clear that New Mexico would apply the economic loss rule in this case. Nonetheless, under New Mexico law, the "difference between a tort and contract action is that a breach of contract is a failure of performance of a duty arising or imposed by agreement; whereas, a tort is a violation of a duty imposed by law." *Kreischer v. Armijo*, 1994-NMCA-118, ¶ 6, 884 P.2d 827 (quoting *Tamarac Dev. Co. v. Delamater, Freund & Assoc., P.A.*, 675 P.2d

14

361, 363 (Kan. 1984)). New Mexico's jurisprudence emphasizes tort principles, including the significant role played by public policy in tort suits. *Doe v. Santa Clara Pueblo*, 2007-NMSC-008, ¶ 39, 154 P.3d 644. Common law claims of negligent and intentional misrepresentation can be examples of claims which arise from an independent and recognized duty of care. *See, e.g.*, *Town of Alma v. ASCO Constr. Inc.*, 10 P.3d 1256 (Colo. 2000) (holding claims of misrepresentation and fraud sound in tort and are designed to remedy economic loss existing independent of contract claims); *Grynberg v. Questar Pipeline Co.*, 70 P.3d 1, 13 (Utah 2003) (holding party who fraudulently induces another to enter contractual relationship may be liable in tort for fraud based on independent duty to avoid fraudulent pre-contractual conduct and on public policy which will not allow contract law to override that duty).

LANB urges the Court to follow *Kachina Rentals, LLC v. Mobile Storage Group, Inc.*, 2009 WL 10666359 (D.N.M. 2009). The *Kachina Rentals* Court held that breaches of contract, whether negligent or fraudulent, only sound in contract. The Court agrees. However, Fidelity's intentional misrepresentation and fraud by silence claims go beyond alleging that LANB failed to perform under the contract. Rather, Fidelity alleges that LANB intentionally hid material facts, effectively resulting in LANB never *intending* to perform under the contract. Thus, LANB's alleged conduct at issue differs from its alleged breach of the Agreement and is extra-contractual in nature, that is, based on breach of an independent duty of care. The Court, therefore, concludes that *Kachina Rentals* does not apply and the economic loss rule does not bar Fidelity's fraud claims.

5. *Negligent Misrepresentation Claim (Count V)*

In New Mexico, negligent misrepresentation is a tort, separate from actions for fraud or

15

deceit. *Maxey v. Quintana*, 1972-NMCA-069, ¶ 17, 499 P.2d 356. Because this tort allegedly occurred in New Mexico, the Court looks to New Mexico negligent misrepresentation law. Applying New Mexico law, to state a claim for negligent misrepresentation, a plaintiff must allege that: (1) the defendant made a statement that, though perhaps literally true, is misleading; (2) the defendant failed to exercise ordinary care in obtaining or communicating the statement; (3) the defendant intended that the plaintiff receive and be influenced by the statement; and (4) it was reasonably foreseeable that the plaintiff would be harmed if the information was incorrect or misleading. *Eckhardt v. Charter Hosp. of Albuquerque, Inc.*, 1998-NMCA-017, ¶ 55, 953 P.2d 722 (distinguishing between negligent and intentional misrepresentation).

LANB argues that Fidelity fails to allege facts demonstrating that LANB provided "false" information, failed to exercise reasonable care, or that Fidelity suffered damages as a result. The Court disagrees. As discussed above, Fidelity alleges that the Access Claims were actually reported to LANB, which LANB failed to disclose during negotiations. Even if LANB did not have actual knowledge of the Access Claims, Fidelity alleges the claims were widely reported on in the media in northern New Mexico and were the subject of a federal lawsuit. As such, Fidelity claims that LANB failed to exercise reasonable care when obtaining information concerning the mortgages at issue if LANB did not have actual knowledge of the Access Claims. Finally, Fidelity consistently asserts that the Access Claims cloud title on the mortgaged properties, which reduces the value of the servicing rights thereto. Fidelity adequately pled sufficient facts to sustain its negligent misrepresentation claim.

Finally, LANB contends that the economic loss rule similarly bars the negligent misrepresentation claim. This argument, too, fails. The representations at issue concern

LANB's knowledge and intent in entering and negotiating the contract, and inducing Fidelity to enter the Agreement, not strictly LANB's performance under the Agreement.

For these reasons, the Court denies LANB's Motion to Dismiss Count V.

IV. Conclusion

As explained herein, Fidelity alleged sufficient facts in its Amended Counterclaim to survive the particularity requirements of Rule 9(b) and to state a claim under Rule 12(b)(6) for all claims except Counts II and IV, Breach of Implied Covenant and Fraud by Silence, which are not recognized under the applicable law.

IT IS, THEREFORE, ORDERED THAT:

1. LANB's Motion to Dismiss Amended Counterclaim (Doc. 30) is granted in part;

2. Breach of Implied Covenant (Count II) and Fraud by Silence (Count IV) of the Amended Counterclaim are dismissed without prejudice for failure to state a claim upon which relief can be granted; and

3. LANB's Motion to Dismiss Amended Counterclaim (Doc. 30) is otherwise denied.

_____
UNITED STATES DISTRICT JUDGE