IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LOS ALAMOS NATIONAL BANK, N.A.,

        Plaintiff,

v.                                                          1:18-cv-00613-KG-JHR

FIDELITY BANK,

        Defendant.

**MEMORANDUM OPINION AND ORDER ON LOS ALAMOS
NATIONAL BANK'S MOTION TO COMPEL INTERROGATORY ANSWERS**

THIS MATTER comes before the Court on *Los Alamos National Bank's Motion to Compel Interrogatory Answers*. [Doc. 62]. The Court, having considered the parties' submissions, the relevant law, and being otherwise fully advised in the premises finds that the Motion is well taken and should be granted.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of alleged breaches of a Mortgage Loan Servicing Rights Purchase Agreement (Agreement) by which Los Alamos National Bank (LANB) sold Fidelity Bank (Fidelity) the servicing rights to approximately 4,500 mortgage loans on real property in northern New Mexico. [Doc. 30-1]. The Agreement provides Fidelity several options in the event of a defect with any of the mortgages whose servicing rights Fidelity purchased. [Doc. 30-1, p. 31]. According to Fidelity, claims by the Pueblos of Nambe, Pojoaque, San Ildefonso, and Tesuque that certain county roads built by the County of Santa Fe trespass on tribal land impact the access roads to approximately 240 real properties subject to mortgages now serviced by Fidelity by virtue of the Agreement with LANB. [Doc. 4, pp. 9-11]. Fidelity further contends that the disputed access roads cloud title to the mortgaged properties. [*Id.*, p. 10].

On April 11, 2018, Fidelity wrote to LANB asserting that the Pueblos' Access Claims clouded title to approximately 240 mortgaged properties, rendering those mortgage loans defective within the meaning of the Agreement. [Doc. 30-2]. Fidelity demanded that LANB repurchase the defective loans. [*Id.*]. LANB refused and filed this declaratory judgment action, seeking a declaration that LANB did not cause a defect in the mortgage loans or servicing rights, has no obligation to repurchase the mortgage loans or servicing rights, and did not breach the Agreement. [Doc. 1]. Fidelity brought contractual and tort counterclaims against LANB, specifically, breach of contract, breach of the implied covenant of good faith and fair dealing, intentional misrepresentation, fraud by silence, and negligent misrepresentation. [Doc. 4, pp. 4-17].

On February 6, 2019, LANB served its First Set of Interrogatories and Requests for Production on Fidelity. [Doc. 46]. LANB's First Set of Interrogatories consisted of five enumerated interrogatories, three of which contained subparts. [Doc. 61-1, pp. 1-10]. Fidelity asserted various objections to each interrogatory and did not provide any substantive answers. [*Id.*]. On March 26, 2019, the Court held an informal discovery conference to address the parties' discovery disputes, including disputes concerning Fidelity's objections to LANB's interrogatories. [Doc. 51].

Counsel for Fidelity represented that Fidelity had engaged Consensus Planning, Inc. to help it identify the mortgages whose servicing rights were impacted by the Pueblos' Access Claims and that it anticipated being able to provide information responsive to LANB's interrogatories by April 12, 2019. [Doc. 50; Doc. 53]. The parties agreed that Fidelity would accordingly supplement its discovery responses by April 12, 2019, LANB would wait to file any Motion to Compel until after the April 12, 2019 supplementation promised by Fidelity, and the remaining pretrial deadlines would be extended to accommodate the additional time provided for discovery. [*Id.*]. The Court

memorialized these parties' stipulations in an *Order Granting Extension of Time* [Doc. 52] and an *Amended Scheduling Order* [Doc. 54].

On April 12, 2019, Fidelity supplemented its answers to LANB's First Set of Interrogatories. [Doc. 58]. The April 12, 2019 supplementation included additional objections to LANB's interrogatories but did not include any responsive answers. [*Compare* Doc. 62-1, pp. 1-10 *with* Doc. 62-2, pp. 1-10]. In making its additional objections, pertaining to Interrogatory Nos. 2, 3, and 5, Fidelity asserted the information sought would be the subject of expert testimony and would be provided in or supplemented concurrently with its expert disclosures. [Doc. 62-2, pp. 1-10]. LANB filed the instant Motion on April 19, 2019. [Doc. 62]. LANB challenges the validity of certain of Fidelity's objections and requests that the Court compel Fidelity to fully answer each of LANB's interrogatories. [*Id.*, pp. 5-8]. LANB also seeks to recover attorneys' fees associated with bringing the Motion. [*Id.*, pp. 8-9].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery, providing that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. However, "[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); *see Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008) ("Under our rules, parties to civil litigation are given broad discovery privileges."). Nonetheless, the Court is not required to permit the parties to engage in fishing

expeditions in the hope of supporting their claims or defenses. *See Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 375 (D.N.M. 2018).

Key considerations in determining the scope of permissible discovery include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Ultimately, "[c]ounsel bears the responsibility of propounding proper discovery requests, and expecting counsel to fulfill this responsibility is neither capricious nor unfair." *Punt v. Kelly Services*, 862 F.3d 1040, 1047 (10th Cir. 2017).

Parties may propound interrogatories and requests for production pursuant to Federal Rules of Civil Procedure 33 and 34, provided that such requests are within the scope of Rule 26(b). *See* Fed. R. Civ. P. 33(a); Fed. R. Civ. P. 34(a). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). A party may move to compel a response if good faith attempts to secure the answer are unsuccessful. Fed. R. Civ. P. 37(a)(3)(B)(iv). The party moving to compel discovery has the burden of proving the opposing party's answers were incomplete. *See Daiflon, Inc. v. Allied Chem. Corp.*, 534 F.2d 221, 227 (10th Cir. 1976).

### III. ANALYSIS

#### A. Fidelity's Objections to LANB's Interrogatories

In its initial discovery responses, Fidelity asserted eight general objections, two definitional objections, and a number of objections specific to each of the five interrogatories. [Doc. 62-2, pp. 1-10]. The briefing on LANB's Motion focuses on two of Fidelity's specific objections; the first

4

is a supernumerary objection asserted as to all five interrogatories[1] and the second is the objection asserted as to Interrogatory Nos. 2, 3, and 5, that the information sought would be the subject of expert testimony to be disclosed or supplemented with Fidelity's expert disclosures, pursuant to the Court's Scheduling Order. [Doc. 62, pp. 5-8; Doc. 66, pp. 2-3; Doc. 67, pp. 2-5].

### 1. Fidelity's Supernumerary Objection

For good or ill, "[i]nterrogatories often contain subparts." *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 664 (D. Kan. 2004); *see Equal Employment Opportunity Comm'n v. New Mexico, Corr. Dep't*, No. 15-CV-879, 2016 WL 9777238, at *3 (D.N.M. Sept. 30, 2016). "Extensive use of subparts ... could defeat the purposes of the numerical limit contained in Rule 33(a), or in a scheduling order, by rendering it meaningless unless each subpart counts as a separate interrogatory." *Williams v. Bd. of Cnty. Comm'rs of Unified Gov't of Wyandotte Cnty. & Kan. City, Kan.*, 192 F.R.D. 698, 701 (D. Kan. 2000). "On the other hand, if all subparts count as separate interrogatories, the use of interrogatories might be unduly restricted or requests for increases in the numerical limit might become automatic." *Id.* To balance these competing considerations, courts faced with the task of counting interrogatory subparts have generally held that "[s]ubparts count as one interrogatory ... only if they are logically or factually subsumed within and necessarily related to the primary question." *Rodriguez v. Chavez*, 2013 WL 1444183, at *1 (D. Colo. Apr. 9, 2013) (internal quotation marks and citations omitted).

---

[1] Fidelity did not raise or address any of its initial objections in its Response to LANB's Motion to Compel. [Doc. 66]. As a result, the objections may be deemed abandoned. *See Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 615 (D. Kan. 2005) ("When ruling upon a motion to compel, the Court will consider only those objections that have been (1) timely asserted, *and* (2) relied up[on] in response to the motion to compel. Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned."); *see also Barton Grant v. OXY USA, Inc.,* No. 04-CV-01123, 2005 WL 8163821, at *3 (D.N.M. July 27, 2005) (finding an objection abandoned where the nonmovant failed to raise or address in response to the motion to compel).

Here, LANB's Interrogatory Nos. 1-3 each contain discernable subparts. [Doc. 62-1, pp. 4-5]. Counting each interrogatory and subpart separately, LANB's interrogatories total 22. [*Id.*]. This number does not exceed the 25 interrogatory limit set by the Court. [Doc. 54, p. 1]. Thus, it is unnecessary to determine whether any of the subparts are subsumed into one interrogatory as this would only further reduce the number of interrogatories counted for purposes of determining the validity of Fidelity's supernumerary objection. [*Id.*].

Moreover, such an analysis is unnecessary here as Fidelity's supernumerary objection is not based on the number of subparts included in LANB's interrogatories. [Doc. 62-2, pp. 6-10]. Rather, Fidelity takes issue with the request that it answer several of LANB's interrogatories and subparts as they apply to each of the mortgages whose servicing rights Fidelity claims to be at issue. [*Id.*]. In making its numerosity objection, Fidelity suggests that each answer specific to each of the mortgages at issue should count as one interrogatory.[2] [*Id.*]. Taking this approach, Fidelity suggested that LANB's five interrogatories (22 including all subparts) became hundreds since many of them had to be answered separately for each of the approximately 240 mortgages Fidelity believed to be at issue at the time.[3] [*Id.* at 8]. Fidelity's approach is not consistent with spirit or purpose of the discovery rules and would lead to absurd results.

"One clear purpose of the federal discovery rules is to facilitate fact finding and prevent unfair surprise." *Dunlap v. City of Oklahoma City*, 12 F. App'x 831, 834 (10th Cir. 2001); *see*

---

[2] Although Fidelity may have abandoned its numerosity argument by not addressing it in its Response to LANB's Motion, the Court will address it here since it was the focus of LANB's Motion and for purposes of clarity as discovery is ongoing and the number of mortgages for which discovery may be sought still far exceeds the permissible number of discovery requests.

[3] Fidelity now asserts, based on a report from its expert, that the number of mortgages whose servicing rights are at issue in this litigation is approximately 120. This does not alter the Court's analysis as Fidelity's supernumerary objection is based on having to answer LANB's interrogatories for each mortgage. Therefore, whether there are 240 mortgages at issue or 120, counting each interrogatory separately as applied to each mortgage would result in a number of interrogatories that exceeds the limit set by the Court.

Fed.R.Civ.P. 26 and advisory committee's notes to 1946 and 1983 amendments. In the context of the present case, limiting the number of interrogatories permitted is intended to facilitate not hinder the exchange of relevant information. *See* Fed.R.Civ.P. 26 and advisory committee's note to 1983 amendment ("The purpose of discovery is to provide a mechanism for making relevant information available to the litigants…[t]hus the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery or unnecessary use of defensive weapons or evasive responses. All of this results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amount involved, or the issues or values at stake.").

Sustaining Fidelity's supernumerary objection in this case would defeat LANB's ability to discover information about the servicing rights for which Fidelity seeks damages, information which it is entitled to discover. *See* Fed.R.Civ.P. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."); *Cardenas v. Dorel Juvenile Grp., Inc.*, 231 F.R.D. 616, 619-20 (D. Kan. 2005) (finding that "the fact that [the p]laintiffs' complaint contain[ed] more than forty paragraphs discussing [a product]'s alleged design defects should not defeat [the defendant]'s ability to discover information regarding each claimed defect" and overruling the [p]laintiffs' objection that [each] interrogatory [was] actually multiple interrogatories that exceed the limit placed on the number of interrogatories."). For these reasons, Fidelity's numerosity objection is overruled.

2. **Fidelity's Objection to Providing Information Subject to Expert Testimony Prior to its Expert Disclosure Deadline**

The timing of Fidelity's expert analyses and disclosures has been an ongoing source of contention between the parties throughout the discovery phase of this litigation. As it pertains to the instant Motion, Fidelity has stated that it cannot provide discovery responses relative to its

damages model without having its damages experts assess its mortgaging service rights for the affected mortgages. [Doc. 66, pp. 2-3]. According to Fidelity, this process could not begin until it, through its expert Consensus Planning, Inc., determined which mortgages are at issue. [*Id.*]. Notably, LANB did not challenge the validity of Fidelity's objection on this issue. LANB's concerns appeared to center around the delay in providing the expert disclosures and the uncertainty as to when any resulting supplement would be provided. [Doc. 67, p. 3-4].

Fidelity made its expert disclosure for its expert from Consensus Planning, Inc. on April 25, 2019, which was its expert disclosure deadline. [Doc. 61; Doc. 66, p. 3]. Fidelity requested a 30-day extension to disclose its damages experts to allow them time to integrate the Consensus Planning, Inc. report into their damages model. [Doc. 58]. The Court granted that extension. [Doc. 76]. Fidelity made its supplemental expert witness disclosures and a second set of supplemental discovery responses after the completion of briefing on the instant Motion. [Doc. 73; Doc. 75]. Accordingly, any objection that LANB's interrogatories were premature until Fidelity made its expert disclosures is now moot.

In its Response to LANB's Motion, Fidelity states that it retained new counsel after the April 12, 2019 date on which it agreed to first supplement its discovery responses and asks the Court to extend this stipulated deadline to accommodate the delay in Fidelity's supplemental expert disclosures. [Doc. 66, pp. 3-4]. The parties stipulated to this deadline to allow Fidelity additional time to provide supplemental responses and to allow LANB additional time to move to compel in the event that the supplementation promised by Fidelity did not address LANB's concerns.[4] [Doc. 50, Doc. 51; Doc. 52; Doc. 53; Doc. 54]. Fidelity did not seek additional time to

---

[4] The stipulated deadline for Fidelity's supplemental discovery responses did not impact Fidelity's ongoing duty to supplement its discovery responses with newly obtained responsive information. *See* Fed. R. Civ. P. 26(e) (providing that "[a] party who has made a disclosure under Rule 26(a)-or who has responded to an interrogatory, request for production, or request for admission-must supplement or correct its disclosure or response…in a timely manner if the

8

meet this agreed upon deadline. Instead, it provided supplemental discovery responses on April 12, 2019 and LANB filed its Motion in accordance with the parties' stipulation. [Doc. 53]. Fidelity does not advance any factual or legal basis for the Court to retroactively disturb the parties' stipulation and being aware of none, it declines to do so.

### 3. LANB's Request for Attorneys' Fees

LANB's seeks reasonable expenses including attorneys' fees relative to the instant Motion. Under Federal Rule of Civil Procedure 37(a)(5)(A), "[i]f the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurrent in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). LANB has demonstrated that Fidelity's initial answers to LANB's Interrogatory Nos. 1-5 as well as the supplemental answers provided on April 12, 2019, were incomplete. To the extent the answers contained in Fidelity's May 24, 2019 supplementation are more complete, those answers were served after LANB filed the instant Motion. [Doc. 62; Doc. 73]. Because the Court is granting LANB's Motion, it finds that under Rule 37(a)(5)(A), LANB is entitled to reasonable expenses incurred in making this Motion. LANB is hereby instructed to file a motion seeking its costs and fees associated with litigating the same.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, *Los Alamos National Bank's Motion to Compel Interrogatory Answers* [Doc. 62] is GRANTED. IT IS THEREFORE ORDERED that Fidelity shall fully answer

---

party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").

LANB's Interrogatory Nos. 1-5 within seven (7) days of the entry of this Order or certify within five (5) days of the entry of this Order that its supplemental answers served May 24, 2019, are complete. IT IS FURTHER ORDERED that LANB file its motion for reasonable expenses within fourteen (14) days of the entry of this Order and must be supported by contemporaneous and meticulous time records and an affidavit establishing the reasonableness of both the hours expended and the hourly rate requested. Plaintiff may file a response and Defendant may file a reply in accordance with this Court's Local Rules. *See* D.N.M.LR-Civ. 7.4.

    IT IS SO ORDERED.

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE